IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KIQUON WEST,<br><br>    Plaintiff,<br><br>    v.<br><br>WELLS FARGO AUTO,<br><br>    Defendant. | CIVIL ACTION<br><br>NO. 22-4405-KSM |

**MEMORANDUM**

**MARSTON, J.**                                                                                                                                                                                                       **January 17, 2023**

    *Pro se* Plaintiff Kiquon West sues Defendant Wells Fargo Auto for violations of the Fair Debt Collection Practices Act ("FDCPA") and Truth in Lending Act ("TILA").  (Doc. No. 1.) Defendant filed a motion to dismiss, arguing that the claims are barred by one year statutes of limitations, that Plaintiff fails to state a TILA right to rescind claim because the right to rescind does not apply to auto loans, and that Plaintiff has not pleaded sufficient facts to support a FDCPA claim.  (Doc. No. 5.)  Plaintiff opposes the motion.  (Doc. Nos. 7, 9.)

    For the reasons discussed below, the Court grants the motion.

**I.**     **Factual Background**

    Accepting all of Plaintiff's allegations as true, the relevant facts are as follows.

    *A.*    *The Retail Installment Sale Contract*

    On May 19, 2021, Plaintiff entered into a Retail Installment Sale Contract ("RISC") with Autopia Motors, LLC[1] to purchase a used 2017 Dodge Challenger.  (*See* Doc. No. 5-4.)  The

---

[1] Under the RISC, Autopia assigned its interest in the contract to Wells Fargo Auto.  (Doc. No. 5-4 at 6.) Plaintiff also alleges that the RISC was assigned to Wells Fargo Auto.  (*See* Doc. No. 1-1 at 15 (Plaintiff's letter to Wells Fargo Auto, stating, "On the 26th day of May 2021 I signed [sic] entered into a Consumer Credit Transaction with Autopia Motors dealership that was later assigned to Wells Fargo

RISC provides that the annual percentage rate, meaning "[t]he cost of [Plaintiff's] credit as a yearly rate," was 5.64%. (*Id.* at 2.) The RISC also states that the amount financed, i.e., "the amount of credit provided to [Plaintiff] on [his] behalf," was $52,412.28, and the finance charge, i.e., "the dollar amount the credit will cost [Plaintiff]," was $9,489.00. (*Id.*) The total sale price, including Plaintiff's cash down payment of $300, amounted to $62,201.28. (*Id.*)

Plaintiff alleges that Wells Fargo violated Section 1605(a) of the TILA when it took the $300 cash down payment. (Doc. No. 1 at 4; *see also id.* at 6 (alleging that he "is aware and has proof . . . that WELLS FARGO AUTO is in violation of 15 USC 1605. A finance charge is in the sum of all charges in a consumer credit transaction and it does not include cash. WELLS FARGO AUTO in fact took cash"); Doc. No. 1-1 at 5 ("[A]ffiant is aware and has proof . . . that Wells Fargo Auto is in violation of 15 USC 1605(a). The finance charge in a Consumer Credit Transaction is determined as the sum of all charges and does NOT include charges of a type payable in a comparable cash transaction. Wells Fargo Auto in fact took a $300 cash down payment and therefore has committed a crime pursuant to 15 USC 1611.").) He also claims that Wells Fargo "willfully and knowingly failed to disclose clearly and conspicuously [his] right to rescind in the initial contract," in violation of the TILA. (Doc. No. 1 at 4; *see also* Doc. No. 1-1 at 5.) In addition, Plaintiff alleges that he "is aware and has proof . . . that WELLS FARGO AUTO is in violation of 15 USC 1692e(2)," the FDCPA. (Doc. No. 1 at 6.)

### B. *Communications Between Plaintiff and Defendant*

On June 1, 2021, Plaintiff sent Defendant an invoice for $19,978, claiming that Defendant owed him $1,000 for "FDCPA Violation 15 USC 1692e(2)" and $18,978 for "TILA violations 15 USC 1605 & 1611." (Doc. No. 1-1 at 3.) At another point, Plaintiff sent

---

Auto to purchase a Dodge Challenger . . . for $52,412.").

Defendant an invoice for $76,390.98, which was broken down as follows: $1,000 for "violation of federal law 15 USC 1692j"; $1,000 for "violation of federal law 15 USC 1692e(8)"; $1,000 for "violation of federal law 15 USC 1692e(2)(a)"; $1,000 for "violation of federal law 1692b(2)"; $1,000 for "violation of federal law 15 USC 1692b(5)"; $18,978 for "twice FINANCE CHARGE pursuant to 15 usc [sic] 1640"; and $52,412.98 for "credit positive balance pursuant to 15 usc [sic] 1666d." (*Id.* at 9.)

On October 19, 2021, Wells Fargo Auto sent Plaintiff a letter stating, "We are writing to explain that effective 10/19/2021 your entire account balance of $53,651.39 became immediately due and owing." (*Id.* at 14.) Wells Fargo Auto explained that because Plaintiff's account was "seriously delinquen[t]," it had "exercised [its] right to accelerate the balance." (*Id.*) At the bottom of the letter, the following message appeared: "THE PURPOSE OF THIS LETTER IS TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." (*Id.*)

In a November 26, 2021 letter to Wells Fargo Auto, Plaintiff wrote that he "now exercises his Right to Rescind and is not liable for any finance or other charge, and any security interest[.]" (*Id.* at 6–7.) In his letter, Plaintiff referenced the letter he received from Wells Fargo Auto, which stated, "The purpose of this letter is to collect a debt." (*Id.* at 6.) He also stated that he was "aware and has proof . . . that [he] has a positive account balance." (*Id.*)

On November 29, 2021, Plaintiff sent Defendant a Notice of Right to Cancel. (*Id.* at 15.) Plaintiff wrote that when he purchased the Dodge Challenger for $52,412, Wells Fargo Auto did not disclose "that the finance charge is the sum of all charges which came to be $9,489" or that he had the right to rescind. (*Id.*) He then stated, "I hereby exercise my Right to Cancel this transaction pursuant to 15 USC 1635. I ask that you send my title lien free . . . and refund my

3

down payment of $300 within 30 days . . . ."  (*Id.*)

Plaintiff also sent Wells Fargo Auto a Cease and Desist Notice,[2] in which he informed Defendant that he "refuse[d] to pay this alleged debt" and "demand[ed] that [Wells Fargo Auto] cease ALL forms of communication with [him] through ANY mediums."  (*Id.* at 8.)  In the Cease and Desist Notice that Plaintiff sent, he wrote, "Throughout the time frame of 6/15/2021 to the present day, your company has repeatedly contacted me, claiming that I owe a debt under WELLS FARGO AUTO account number 9670294536.  I do not owe this alleged debt, and I have disputed it and allowed you appropriate time to show evidence of this debt to be valid, but you have disregarded these repeated requests to valid [sic] the debt."  (Doc. No. 1-1 at 8.)

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When reviewing a motion to dismiss, courts "must accept the allegations in the complaint as true, but are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation."  *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted).  "As a general matter, a district court ruling on a

---

[2] The notice is not dated.

motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "However an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.* (cleaned up). The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (quotation marks omitted).

"While a plaintiff's factual allegations must be enough to raise a right to relief above a speculative level, complaints filed *pro se* must be liberally construed." *Muchler v. Greenwald*, 624 F. App'x 794, 797 (3d Cir. 2015) (cleaned up); *see also Smith v. Shop Rite*, Civil Action No. 3:17-cv-0907, 2018 WL 2424136, at *2 (M.D. Pa. May 9, 2018) (noting that although "[a] complaint by a pro se litigant is to be liberally construed," "pro se litigants still must allege sufficient facts in their complaint to support a claim" (cleaned up)); *Strader v. U.S. Bank Nat'l Ass'n*, Civil Action No. 2:17-cv-684, 2018 WL 741425, at *5 n.8 (W.D. Pa. Feb. 7, 2018) ("It is true that pro se plaintiffs are not held to the same standard as lawyers when the Court analyzes formal pleadings, but any pleading must still contain sufficient factual allegations that, when accepted as true, state a claim to relief that is plausible on its face." (cleaned up)).

**III. Discussion**

    ***A. Right to Rescind under the TILA***

Defendant argues that Plaintiff's TILA claim must be dismissed to the extent it is based on a failure to notify Plaintiff of his right to rescind because the right to rescind only applies to residential mortgages, not auto loans. (*See* Doc. No. 5-3 at 7; Doc. No. 8 at 1–3.)

Congress intended for the TILA "to assure meaningful disclosure of credit terms" and "to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15

5

U.S.C. § 1601(a). "The TILA requires lenders to disclose the cost of credit to borrowers as a dollar amount. This is done by disclosing, among other things, the amount financed, the finance charge, the annual percentage rate, and the total sale price." *Shareef v. Chrysler Capital*, Civil Action No. 21-3858, 2022 WL 1045533, at *2 (E.D. Pa. Apr. 7, 2022) (citing 15 U.S.C. § 1638(a); 12 C.F.R. § 226.18). The sum of the "amount financed" and the "finance charge" makes up the "total of payments." 15 U.S.C. § 1638(a). "The 'finance charge' is the sum of all charges, minus certain exclusions, payable by the borrower and imposed by the creditor incident to the extension of credit." *Shareef*, 2022 WL 1045533, at *2 (citing 15 U.S.C. § 1605(a)).

Plaintiff claims that Defendant violated the TILA by failing to clearly and conspicuously inform him of his right to rescind the transaction. (*See generally* Doc. Nos. 1, 1-1.) He is mistaken. The TILA "provides, with certain exceptions, 'in the case of any consumer transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the *principal dwelling* of the person to whom credit is extended, the obligor shall have the right to rescind the transaction.'"[3] *Hudson v. Scharf*, Case No. C21-5827 JLR, 2022 WL 1227111, at *2 (W.D. Wash. Apr. 25, 2022) (quoting 15 U.S.C. § 1635(a)) (emphasis added). Courts routinely hold that the right to rescind under § 1635(a) does not apply to the purchase of motor vehicles. *See, e.g.*, *Stephens v. Regional Hyundai, LLC*, Case No. 21-CV-0414-CVE-SH, 2022 WL 3139749, at *2 (N.D. Okla. Aug. 5, 2022) ("Plaintiff claims she should have been notified that she had a right to rescind the contract under 15 U.S.C. § 1635. . . . The credit agreement in this case was for the purchase of an automobile and § 1635 is inapplicable, and the

---

[3] "Regulation Z, which was promulgated to implement [the] TILA, likewise provides that, with certain exceptions, 'in a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction.'" *Hudson v. Scharf*, Case No. C21-5827 JLR, 2022 WL 1227111, at *2 (W.D. Wash. Apr. 25, 2022) (quoting 12 C.F.R. § 1026.23(a)(1)).

disclosures were not deficient due to an alleged failure to notify plaintiff of a right to rescind the contract."); *Hudson*, 2022 WL 122711, at *3 ("Because the consumer transaction Mr. Hudson seeks to rescind is a vehicle purchase that does not have any alleged connection to his principal dwelling, he cannot state a claim for relief under section 1635 or its implementing regulations."); *Jeffries v. Wells Fargo Bank, NA*, No. 10-cv-5889, 2011 WL 5023396, at *4 (N.D. Ill. Oct. 19, 2011) ("Here, the Federal Truth-in-Lending Disclosures section of the contract affirmatively states that Wells Faro 'will have a security interest in the vehicle being purchased.' Jeffries is not entitled to rescind the contract under 15 U.S.C. § 1635 because the contract was secured by the vehicle rather than real property that Jeffries used as her principal dwelling.").

Accordingly, Plaintiff does not have a right to rescind his purchase of the Dodge Challenger under 15 U.S.C. § 1635 and thus, fails to state a claim for violations of § 1635.

### B. Statute of Limitations for the TILA and FDCPA

Defendant also argues that Plaintiff's TILA and FDCPA claims are time-barred by the statutes' respective one year limitations periods. (Doc. No. 5-3 at 6–7; Doc. No. 8 at 3–4.) The Court addresses each in turn.

#### 1. TILA Claim

Most TILA claims must be brought within one year of the alleged violation.[4] *See* 15 U.S.C. § 1640(e) ("Except as provided in the subsequent sentence, any action under this section may be brought . . . within one year from the date of the occurrence of the violation . . . ."). "In a case where the alleged violation was the failure to make timely disclosures, the date of the violation is deemed to be the date that the loan was consummated, which is characterized as

---

[4] Certain TILA claims have a three year limitations period instead. *See* 15 U.S.C. § 1640(e) ("Any action under this section with respect to violation of section 1639, 1639b, or 1639c of this title may be brought . . . before the end of the 3-year period beginning on the date of the occurrence of the violation.").

when the consumer becomes contractually obligated on a credit transaction. Essentially, the violation occurs at the point in time when the disclosures should have been made but were not." *Alejandro v. Freedom Mortg. Corp.*, Civil Action No. 22-897, 2022 WL 2068247, at *4 (E.D. Pa. June 8, 2022) (cleaned up). "A statute of limitations defense may be raised where the expiration of the limitations period appears on the face of the complaint. A court may dismiss a complaint for failure to state a claim based on the statute of limitations when it is clear from the face of the complaint that it is time-barred." *Shareef*, 2022 WL 1045533, at *2 (cleaned up).

Here, Plaintiff alleges that Defendant violated TILA by failing to inform him of his right to rescind and taking his $300 cash down payment, both of which appear to have occurred at the time the parties entered into the contract on May 19, 2021. Accordingly, Plaintiff's TILA claim expired on May 19, 2022 and is untimely, as he did not initiate this lawsuit until November 4, 2022. Further, Plaintiff has not alleged any facts showing that equitable tolling applies. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's TILA claim as time-barred.[5] *See Shareef*, 2022 WL 1045533, at *2–3 ("According to his complaint, Shareef entered into a retail installment sale contract with Foulke on April 15, 2014 in connection with the sale of a used car. He avers that Chrysler violated the TILA because it did not include certain amounts in the finance charges, did not disclose his right of recission, and advised him that it was not required to provide him with insurance. It appears from the complaint that the alleged violations took place when Shareef entered into the sales contract on April of 2014. The statute of

---

[5] Plaintiff's reliance on 15 U.S.C. § 1635(f) is misplaced. (*See* Doc. No. 7 at 1.) First, for the reasons discussed above, Plaintiff cannot state a claim for rescission under § 1635. Second, the three years referenced in the § 1635(f) refers to the time limit for exercising the right to rescind, not the time limit for bringing a claim for TILA violations. *See* 15 U.S.C. § 1635(f) ("An obligator's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever comes first.").

limitations for TILA claims is subject to equitable tolling. Nothing in Shareef's complaint suggests any grounds for excusing his failure to file his claim within the statute of limitations. Therefore, because Shareef did not file this action until August of 2021, his TILA claims are time-barred."); *McCoy v. Merck Sharp & Dohme Fed. Credit Union*, Civil Action No. 21-CBV-4550, 2022 WL 138071, at *4 (E.D. Pa. Jan. 14, 2022) ("Here, Plaintiff's allegations regarding Defendant's violations of the TILA concern Defendant's conduct at the execution of loan agreement. The loan agreement appended to Plaintiff's Amended Complaint shows that it was executed on December 26, 2018. Therefore, under TILA's one-year statute of limitations, Plaintiff had until December 26, 2019 to file suit. But, he did not do so until October 14, 2021, and has not alleged that equitable tolling applies. Accordingly, his TILA claims must be dismissed."); *Perez v. Ardent Credit Union*, Civil Action No. 21-4729, 2022 WL 118225, at *1 (E.D. Pa. Jan. 11, 2022) ("As confirmed by the loan documents plaintiff attached to her amended complaint, plaintiff obtained the auto loan from defendant on September 15, 2018 and the personal loan on May 15, 2019. According to plaintiff, they contained inaccurate disclosures in violation of the TILA. The action was not filed until October 20, 2021. Plaintiff filed this claim too late. It will be dismissed.").

### 2. **FDCPA Claim**

An FDCPA claim must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). As noted above, a statute of limitations defense may be raised on a motion to dismiss when the expiration of the limitations period appears on the face of the complaint. *Shareef*, 2022 WL 1045533, at *2; *see also Mickman v. Phila. Professional Collections, Inc.*, Civil Action No. 21-4221 2022 WL 2974897, at *2 (E.D. Pa. July 26, 2022).

Here, Plaintiff does not address the FDCPA statute of limitations argument in his

9

opposition brief.[6]  Nor does Plaintiff necessarily make clear in his Complaint *how* Defendant violated the FDCPA.

However, in one of the affidavits attached to his Complaint, Plaintiff wrote that he was "aware and ha[d] proof in the attachment labeled as Exhibit A that WELLS FARGO AUTO is in violation of 15 USC 1692e(2)." (Doc. No. 1 at 6.).  In Exhibit A, which is the RISC, Plaintiff circled the "total of payments" he owes, $61,901.28, drew a line, and wrote in, "Violation of 15 USC 1692e(2)." (*See* Doc. No. 1-1 at 1.)  Under 15 U.S.C. § 1692e(2), a debt collector may not falsely represent "(A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt."  To the extent that Plaintiff claims the RISC was a false representation of the amount he owed, Plaintiff's FDCPA claim is time-barred.  The RISC was signed on May 19, 2021, and this suit was not filed until November 4, 2022—well over a year later.

In a different affidavit, Plaintiff averred that he was "aware and ha[d] proof in attachment labeled as Exhibit B that Wells Fargo Auto is in violation of 15 USC 1692j for designing a contract that deceptively lures the customer into believing he owes such a debt to Wells Fargo Auto." (Doc. No. 1-1 at 6.)  Plaintiff also wrote that he was "aware and ha[d] proof in the attachment[s] labeled as Exhibit[s] B and D that Wells Fargo Auto is in violation of 15 USC 1692e(2)(A) for displaying . . . the amount financed as $52,412.28 which is a false representation of the character and amount of this debt.  The amount listed is showing a positive balance." (*Id.*)

Exhibit B is the RISC.  (*See id.* at 11.)  Again, the RISC was dated May 19, 2021 and therefore, any FDCPA claim based on the RISC itself is barred by the one year statute of

---

[6] Ordinarily, the Court would find the argument waived, since Plaintiff failed to address it; however, because Plaintiff is proceeding *pro se*, we consider the argument in its entirety.

limitations.  Next, Exhibit D is largely illegible and appears to be an undated document providing "Payment History Details" on the auto loan.  (*See id.* at 13.)  To the best the Court can discern, the posting date for the "New Loan" appears to be either May or June 25, 2021.  (*See id.*)  Accordingly, to the extent that Plaintiff's FDCPA claim is based on Exhibit D, it is time-barred.

In the same affidavit, Plaintiff wrote that he was "aware and has proof in the attachment labeled as Exhibit E that Wells Fargo Auto is in violation of 15 USC 1692e(8) by reporting to Consumer reporting agencies negative and false credit information." (*Id.* at 6.)  Plaintiff also averred that he was "aware and has proof that Wells Fargo is in violation of 15 USC 1692b(2) by stating in a letter labeled as Exhibit E . . . that 'The purpose of this letter is to collect a debt' implying that [Plaintiff] owes a debt." (*Id.*)  Further, Plaintiff stated that he is "aware and has proof in the attachment labeled as Exhibit E that Wells Fargo is in violation of 15 USC 1692b(5) because a symbol is in the contents of the letter from Wells Fargo Auto that indicates they are in the debt collection business." (*Id.*).

Exhibit E is a letter dated October 19, 2021, in which Wells Fargo Auto informed Plaintiff that his account was seriously delinquent and the entire account balance of $53,651.39 became due.  (*Id.* at 14.)  The letter also stated that Defendant "reported to consumer reporting agencies (also known as credit bureaus) [Plaintiff's] account as 'unpaid balance reported as a loss (charge off) by credit grantor.'" (*Id.*)  The letter is dated October 19, 2021 and therefore, to the extent Plaintiff wished to file a FDCPA claim based on this letter, he should have done so by October 19, 2022.  He did not.  Accordingly, any FDCPA claim based on this letter is barred by the statute of limitations.

In sum, the Court concludes that Plaintiff's FDCPA claim is time-barred.[7]

* * *

Because the Court finds that Plaintiff's TILA and FDCPA claims are barred by the respective one year statutes of limitations, we do not address Defendant's remaining arguments—namely, whether Plaintiff fails to state a FDCPA claim and whether Plaintiff fails to state a TILA claim to the extent it is based on Plaintiff's contention that Section 1605 prohibits Wells Fargo Auto from taking a cash down payment.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendant's motion to dismiss.

An appropriate Order follows.

---

[7] Although equitable tolling is available in FDCPA suits, Plaintiff has not alleged any facts indicating that equitable tolling applies here. *See Mickman*, 2022 WL 2974897, at *2 ("Equitable tolling is available in FDCPA suits. It is used sparingly, when either the defendant has actively misled the plaintiff respecting his or her cause of action, the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or when the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. Here, Mickman has alleged no special circumstances. She offers no factual bases to excuse her late filing. Therefore, her FDCPA claim is barred by the statute of limitations.").